UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DANIELLE SARMIENTO, et al.,

    Plaintiffs,

v.

RUBY MARQUEZ, et al.,

    Defendants.

Case No. 21-cv-06712-PJH

**ORDER OF DISMISSAL**

Re: Dkt. No. 56

Defendants' motion to dismiss the second amended complaint came on for hearing before this court on November 3, 2022. Plaintiffs appeared through their counsel, David P. Morales. Defendants appeared through their counsel, Melissa C. Shaw. Having read the papers filed by the parties and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby GRANTS defendants' motion, for the following reasons.

**BACKGROUND**

This is a § 1983 case involving alleged religious discrimination and deprivation of Due Process by the Santa Cruz County Human Services Department over the course of several administrative and judicial proceedings. Plaintiffs Danielle Sarmiento and Michael Sanchez are the former foster parents and de facto parents of a child who they hoped to formally adopt. Second Amended Complaint ("SAC") ¶ 20. Defendants include the County of Santa Cruz, California, and several of its employees involved in the proceedings. SAC ¶¶ 9–16.

### A.     Alleged Religious Discrimination

Plaintiffs contend that, as they were proceeding toward adoption of the child in their care, County social worker Luz Sanclemente asked Sarmiento whether she "[believed] in God," and whether she "[believed] in Jesus Christ."  SAC ¶¶ 20–21.[1]  Plaintiffs allege that defendants thereafter sought to remove the child from their care in "retaliation for not appearing to be Christians."  SAC ¶ 21.  Plaintiffs allege that defendants' reasons for attempting to remove the child from plaintiffs' care appeared wholly pretextual.  SAC ¶ 23.

### B.     State Court Proceedings

#### 1.     Dependency Action & Family Maintenance

After a 12-day trial in September 2019 challenging the pretextual removal (the "Dependency Action"), plaintiffs prevailed, and the child remained with plaintiffs following the trial.  SAC ¶ 30.  The child remained with plaintiffs pursuant to the trial verdict for another eight months.  During this time, the child's biological father was located, and reunification with him became possible through the procedure of "Family Maintenance."  Request for Judicial Notice ("RJN"), Ex. I, p. 9: In re: J.C., Minute Order of May 28, 2020, reuniting the minor with his biological father via "Family Maintenance" (Dkt. 56-4 at 165).  The reunification and Family Maintenance was well after, and completely unrelated procedurally, to the Dependency Action regarding the interim placement.  See id.; Ex. I, pp. 14–15: May 28, 2020, Order Re: Commencing Family Maintenance (Dkt. 56-4 at 170–71).

#### 2.     Writ Action

Plaintiffs challenged the basis for the interim child placement by filing a petition for writ of mandate related to the Dependency Action (the "Writ Action") on September 19, 2019.  RJN, Ex. A (Dkt 56-4 at 5–20).  In the Writ Action, plaintiffs sought to have the

---

[1] Sanclemente was named as a defendant in the SAC, but the court dismissed her with prejudice in its order dismissing the first amended complaint.  Dkt. 52 at 9–12.  Sanclemente remains dismissed with prejudice.

1  Civil Division of the Santa Cruz Superior Court find that the County's actions to remove
2  the child (the child was never actually removed) were "arbitrary and capricious" and
3  otherwise not supported by evidence.  See RJN, Ex. A, at 3 (Dkt. 56-4 at 7).  The
4  Superior Court sustained the County's demurrer without leave to amend and dismissed
5  the Writ Action finding, inter alia, that both actions (the Dependency and the Writ Actions)
6  sought to address the same primary rights, and that the Writ Action, having emanated
7  from the Dependency Action, was completely barred by lack of jurisdiction, res judicata,
8  and the claims splitting doctrine.  RJN, Ex. B (Dkt. 56-4 at 22–26).  Further, where
9  plaintiffs' available relief under California Welfare and Institutions Code § 388 was
10 litigated in the Dependency Action, there was a lack of any justiciable controversy
11 because the decision to remove the child had already been vacated and plaintiffs' claims
12 were moot.  RJN, Ex. B (Dkt. 56-4 at 22–26).  The court found in the Writ Action, "It
13 appears to the court that [plaintiffs'] continued litigation of this petition is an attempt to
14 circumvent the Dependency Court's placement order[.]"  RJN, Ex. B, at 2–3 (Dkt. 56-4 at
15 23–24).

### 3. State Court Appeals

17 In addition to filing the Writ Action, plaintiffs also appealed the trial verdict and
18 several orders issued in the Dependency Action.  There are five appeals in the California
19 Court of Appeal involving that matter, including Case No's. H047579, H048081,
20 H048305, H048495 and H048740, all of which arise from the interim placement decision
21 and the Dependency Action.  RJN, Ex. C, D, E, F, and G (Dkt. 56-4 at 28, 30, 32, 34, 36).
22 Cases H048305, H048495, and H048740 are still active as of the filing of this motion.
23 Plaintiffs take issue with the way the County handled the investigation, assessment,
24 determination, and interim placement decision.

### C. Procedural History in this Case

26 Plaintiffs filed their initial complaint in this case on August 30, 2021, and the case
27 was assigned to Magistrate Judge Cousins.  Dkt. 1, Dkt. 4.  On August 31, 2021, plaintiffs
28 were instructed to file a summons with the name and addresses of the defendants who

3

1    must be served. Dkt. 4. Plaintiffs did not respond to multiple requests from the clerk's
2    office and the court regarding proof of service. Dkt. 8. On November 30, 2021, the court
3    ordered plaintiffs to file proof of service by December 29, 2021, or else it would dismiss
4    the case without prejudice, and specifically warned that a continued failure to serve could
5    result in a dismissal for failure to prosecute and for failure to comply with court orders.
6    Dkt. 8. Plaintiffs failed to respond.

On January 4, 2022, Judge Cousins issued an order requesting reassignment of the case to a district judge with a recommendation to dismiss without prejudice for failure to serve defendants and for failure to prosecute. Dkt. 9 at 2. The case was assigned to this court on January 4, 2022. Dkt. 11. On January 7, 2022, the court ordered plaintiffs to serve defendants by January 21, 2022. Dkt. 18. On January 28, 2022, the court granted plaintiffs' late request to extend the deadline for service until February 4, 2022. Dkt. 21.

On February 9, 2022, plaintiffs filed their FAC, also late. Dkt. 25. Plaintiffs' counsel declared that on February 9, 2022, he personally delivered a copy of the FAC and the summons to the clerk of the Board for the County for all defendants. See "Certificate[s] of Service" (Dkt. 26–34). During a case management conference held on March 17, 2022, the parties informed the court that plaintiffs had only properly served the County. Dkt. 39. Counsel for the County informed the court that she had no authority to accept service on behalf of the individual defendants. Dkt. 39. The court extended plaintiffs' service deadline by 30 days to serve the remaining defendants. Dkt. 39. No proofs of service were filed by April 17, 2022.

On May 2, 2022, defendants Marquez, Sullivan, De la Peña, Timberlake, Crisman, Vikati, and the County of Santa Cruz moved to dismiss plaintiffs' FAC in its entirety. Dkt. 41 at 8. Plaintiffs' counsel did not appear at the hearing to oppose the motion. Dkt. 51. On July 25, 2022, the court granted the motion to dismiss, and dismissed with prejudice defendants Keith Bostick and Luz Sanclemente in light of plaintiffs' repeated failure to serve them. Dkt. 52. The court otherwise granted leave to amend, but it issued specific

1  drafting instructions to improve the clarity of any amended pleading.  Dkt. 52 at 9.

2  Plaintiffs filed the now-operative SAC on August 22, 2022.  Dkt. 53.  Plaintiffs

3  enumerate eight causes of action, which they describe as follows:

4      1.  Religious Discrimination,

5      2.  Violation of Federal Civil Rights,

6      3.  Monell,

7      4.  Intentional Infliction of Emotional Distress,

8      5.  Negligent Infliction of Emotional Distress,

9      6.  Unfair Business Practices Under California's Business and Professions Code

10        § 17200,

11     7.  Violation of California Civil Rights laws, and

12     8.  for Injunctive and Declaratory Relief.

13 SAC ¶¶ 36–105.

14 In the instant motion, defendants ask the court to dismiss the amended complaint

15 in its entirety.  Dkt. 56-3.  Defendants also submit (1) a motion to seal the documents

16 from the administrative and state court proceedings to protect the identity of the minor

17 involved, (2) a request for judicial notice of several documents from the underlying

18 administrative proceedings and state court appeals.  For the reasons stated at the

19 hearing, both the administrative motion to seal (Dkt. 56) and the request for judicial notice

20 (Dkt. 56-4) are GRANTED.

21 In their opposition to the motion, plaintiffs made a few specific requests.  As stated

22 at the hearing, the court DENIES plaintiffs' request to submit additional materials to

23 counter those submitted by defendants in their request for judicial notice as there was

24 nothing preventing plaintiffs from also requesting judicial notice of appropriate materials

25 in their opposition; the court DENIES plaintiffs' request for Rule 11 sanctions against

26 counsel for defendants because they failed to comply with the procedural requirements of

27 both the Local Rules and the Federal Rules of Civil Procedure and on the merits; and the

28 court DENIES plaintiffs' request for reconsideration of the order dismissing Luz

Sanclemente with prejudice because plaintiffs again failed to comply with the Local Rules and on the merits.

**DISCUSSION**

**A.    Legal Standard**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  While "detailed factual allegations are not required," a complaint must include sufficient facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  A claim is facially plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

A motion to dismiss a complaint under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in a complaint. See Fed. R. Civ. P. 12(b)(6).  Dismissal under Rule 12(b)(6) may be based either on the "lack of a cognizable legal theory" or on "the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988).

When evaluating such a motion, the court must accept all material allegations in the complaint as true, even if doubtful, and construe them in the light most favorable to the non-movant. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." Epstein v. Wash. Energy Co., 83 F.3d 1136, 1140 (9th Cir. 1996).

A court's review is generally limited to the contents of the complaint, although the court may also consider documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the plaintiff's pleading." Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005) (internal quotation marks and alteration omitted).  The court may also consider matters that are properly the subject of judicial notice, Lee v. City of Los Angeles, 250 F.3d 668, 688-89

1   (9th Cir. 2001), and documents referenced extensively in the complaint and documents
2   that form the basis of plaintiffs' claims, No. 84 Emp'r-Teamster Jt. Council Pension Tr.
3   Fund v. Am. W. Holding Corp., 320 F.3d 920, 925 n.2 (9th Cir. 2003).

4   Where dismissal is warranted, it is generally without prejudice, unless it is clear the
5   complaint cannot "be saved by any amendment." Sparling v. Daou, 411 F.3d 1006, 1013
6   (9th Cir. 2005) (internal quotation marks omitted). "Leave to amend may also be denied
7   for repeated failure to cure deficiencies by previous amendment." Abagninin v. AMVAC
8   Chem. Corp., 545 F.3d 733, 742 (9th Cir. 2008).

**B. Analysis**

The court first addresses the overall pleading deficiencies of the SAC, then turns to the merits of the federal claims before addressing jurisdiction over the claims arising under state law.

**1.   Federal Rule of Civil Procedure 8**

A complaint does not suffice "if it tenders naked assertions devoid of further factual enhancement." Iqbal, 555 U.S. at 678. Allegations must "provide sufficient notice to all of the Defendants as to the nature of the claims being asserted against them," including "what conduct is at issue." Villalpando v. Exel Direct Inc., No. 12-CV-04137 JCS, 2014 WL 1338297, at *5 (N.D. Cal. Mar. 28, 2014). Generally, a complaint's "failure to allege what role each Defendant played in the alleged harm makes it exceedingly difficult, if not impossible, for individual Defendants to respond to Plaintiffs' allegations." In re iPhone Application Litig., No. 11-MD-02250-LHK, 2011 WL 4403963, at *8 (N.D. Cal. Sept. 20, 2011).

In the previous order of dismissal, the court expressly instructed that plaintiffs' amended pleading must, for each cause of action, "(1) set forth what right has been violated, (2) name the defendant or defendants who have committed the violation, (3) recite the elements for each violation, (4) describe the specific conduct that amounts to a violation, that is, conduct that meets those elements." Dkt. 52 at 9. Plaintiffs did not comply with that instruction in the SAC.

As was the case with the first amended complaint, the SAC fails to put any single individual or entity on notice.  For example, though plaintiffs bring a claim for religious discrimination, they do not specify any particular defendant who committed the violation, they do not articulate the necessary elements for discrimination, and the only conduct described is that Sanclemente "questioned Plaintiffs regarding their religious beliefs, then she (together with defendants Crisman and Vikati) decided to remove the child from Plaintiffs' care for discriminatory and pretextual reasons."  SAC ¶ 37.  As with the previous complaint, plaintiffs again generally fail to describe any specific conduct by any individual defendant amounting to a claim.  By copying/pasting a list of averments of individual conduct as support for nearly every claim, plaintiffs again fail to differentiate which allegations support which cause of action, and they again fail to explain how the described conduct amounts to a violation.  SAC ¶¶ 38, 46, 63, 74, 86.  Plaintiffs fail to provide even a formulaic recitation of the elements of their causes of action.  And it is not the court's duty to guess what conduct plaintiffs believe amounts to a violation or which defendant committed the violation, regardless of plaintiffs' request for the court to strike surplusage.  Therefore, plaintiffs' SAC is dismissed for the failure to provide a short and plain statement of facts giving rise to defendants' liability.

### 2. Federal Claims

Plaintiffs enumerate three federal claims based on purported constitutional violations, including: (1) religious discrimination in violation of the First Amendment to the U.S. Constitution as well as Article I, Section 4 of the California Constitution, alleged against all individual defendants; (2) violation of Title 42 U.S.C. § 1983 and § 1985 for preventing plaintiffs from exercising their First and Fourteenth Amendment rights, alleged against all individual defendants; and (3) "Monell-related claims" for practices or policies that caused the violations of plaintiffs' First and Fourteenth Amendment rights, alleged against the County of Santa Cruz.  These claims are discussed in turn, with the § 1985 claim discussed separately.

In relevant part, § 1983 provides that:

> Every person who, under color of any statute . . . of any State or Territory or the District of Columbia, subjects . . . any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured....

42 U.S.C. § 1983. "To establish § 1983 liability, a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." Tsao v. Desert Palace, Inc., 698 F.3d 1128, 1138 (9th Cir. 2012); see also West v. Atkins, 487 U.S. 42, 48 (1988).

### a. Religious Discrimination

Plaintiffs potentially advance three bases for their first cause of action, religious discrimination. First, they aver that defendants' conduct interfered with their Free Exercise rights under the First Amendment to the U.S. Constitution. SAC ¶ 40. Second, they aver that defendants' conduct was designed to retaliate against plaintiffs "for not appearing to be Christians." SAC ¶ 21. Third, they aver that defendants infringed on their right to free exercise of religion under the California Constitution. SAC ¶ 41. These theories are discussed in turn to determine whether plaintiffs have stated a claim under any of them.

### 1. Free Exercise

A state actor violates the Free Exercise Clause of the First Amendment when it "substantially burdens the person's practice of their religion." Jones v. Williams, 791 F.3d 1023, 1031 (9th Cir. 2015). This standard requires "more than an inconvenience on religious exercise; it must have a tendency to coerce individuals into acting contrary to their religious beliefs or exert substantial pressure on an adherent to modify his behavior and to violate his beliefs." Id. at 1031 (cleaned up).

Here, plaintiffs allege that Sanclemente's religious bias, as demonstrated through her questioning of whether plaintiffs were adherents of Christianity, led to a joint effort

along with all defendants to remove the child from plaintiffs' care. SAC ¶¶ 21, 38. Sanclemente's query into plaintiffs' beliefs, however, did not at all "coerce [them] into acting contrary to their religious beliefs or exert substantial pressure on [plaintiffs] to modify [their] behavior and to violate [their] beliefs." Jones, 791 F.3d at 1031. Plaintiffs do not identify any action they took differently based on Sanclemente's questioning. Plaintiffs do not represent that Sanclemente offered a quid pro quo, such as continued custody of the child in exchange for plaintiffs' conversion to Christianity. Even if the court accepted that plaintiffs were injured by being compelled to engage in administrative and legal proceedings to preserve their custody of the child, they fail completely to allege how such injury arose from a violation of their constitutional right to Free Exercise of religion. Therefore, to the extent plaintiffs' First Amendment claim is premised on a Free Exercise violation, the claim must be dismissed.

### 2. Retaliation

A First Amendment claim for retaliation requires a "substantial causal relationship" between a plaintiff's "constitutionally protected activity" and "adverse [government] action . . . that would chill a person of ordinary firmness from continuing to engage in the protected activity." Blair v. Bethel Sch. Dist., 608 F.3d 540, 543 (9th Cir. 2010).

Here, the SAC only speculates that there was a relationship between (1) plaintiffs' response to Sanclemente that they are not Christians and (2) defendants' actions to remove the child from plaintiffs' care. Plaintiffs allege in conclusory fashion that defendants' actions to remove the child were admittedly pretextual. Dkt. 57 at 7 (citing SAC ¶¶ 22–23, 27). But plaintiffs provide no factual support for such admissions of pretext, and they fail to plead facts supporting the existence of religious animus. They fail even to plead a causal relationship where they do not allege a nexus between Sanclemente's religious questioning and the alleged harm they suffered throughout the administrative and legal proceedings to preserve their custody of the child. Plaintiffs do not adequately plead retaliatory conduct that breaches their First Amendment rights.

Further, plaintiffs fail to identify any constitutionally-protected activity from which

they were barred based on defendants' conduct.  As discussed more in-depth below, plaintiffs do not hold a constitutionally-protected interest in their relationship with the child in this case, and they do not hold a constitutionally-protected interest in any of the child custody procedures.  Plaintiffs, as de facto parents, only have certain rights enshrined in state Rules of Court to participate in dependency proceedings, rights which are not protected by the U.S. Constitution.  Plaintiffs fail to plead that defendants took "adverse action" based on Sarmiento's response to a religious inquiry with a sufficiently "substantial causal relationship" to chill plaintiffs' participation in a constitutionally-protected activity.  To the extent plaintiffs' religious discrimination claim is based on a theory of retaliation, it must be dismissed on this ground as well.

### 3. State Constitutional Claim

Plaintiffs' claim for violation of Article I, Section 4 of the California Constitution cannot advance as part of this § 1983 claim.  State constitutional claims are not cognizable under § 1983 because they fail to satisfy the first element, i.e., that a right secured by the Constitution or laws of the United States was violated.  West, 487 U.S. at 48.  Therefore, plaintiffs' religious discrimination claim also fails on this third basis.

### b. Due Process

To establish a "substantive due process claim, a plaintiff must . . . show a government deprivation of life, liberty, or property."  Costanich v. Dep't of Soc. & Health Servs., 627 F.3d 1101, 1110 (9th Cir. 1010) (quoting Nunez v. City of L.A., 147 F.3d 867, 871 (9th Cir. 1998)).  However, "before turning to the question of whether [plaintiffs'] due process rights were violated, [the court] must first determine whether there has been a deprivation of life, liberty, or property."  Id.  "State law can create a right that the Due Process Clause will protect only if the state law contains (1) substantive predicates governing official decisionmaking, and (2) explicitly mandatory language specifying the outcome that must be reached if the substantive predicates have been met."  James v. Rowlands, 606 F.3d 646, 656 (9th Cir. 2010) (citations and quotation marks omitted).  "To create a right protected by the Due Process Clause, the state law must provide more

11

than merely procedure; it must protect some substantive end." Id. at 656–57 (citing Olim v. Wakinekona, 461 U.S. 238, 250 n.12 (1983)) (citations and quotation marks omitted).

The U.S. Supreme Court has recognized that "choices to enter into and maintain certain intimate human relationships must be secured against undue intrusion by the State because of the role of such relationships in safeguarding the individual freedom that is central to our constitutional scheme." Roberts v. U.S. Jaycees, 468 U.S. 609, 617–18 (1984). "In protecting certain kinds of highly personal relationships, the Supreme Court has most often identified the source of the protection as the due process clause of the fourteenth amendment, not the first amendment's freedom to assemble." IDK, Inc. v. Cnty. of Clark, 836 F.2d 1185, 1192 (9th Cir. 1988)).

Flowing from this right to familial association, the Ninth Circuit has made clear that "there is no question that *parents* have a constitutionally protected liberty interest in making decisions about the care, custody, and control of their children." Miller v. California, 355 F.3d 1172, 1175 (9th Cir. 2004) (emphasis in original). Under California law, however, a "de facto" parent has a distinct interest—a de facto parent is one who "on a day-to-day basis, assumes the role of parent, seeking to fulfill both the child's physical needs and his psychological need for affection and care." Id. at 1175 (quoting In re Crystal J., 92 Cal.App.4th 186, 190 (2001)). "De facto parents do not have the same substantive rights and preferences as parents or even legal guardians." In re A.F., 227 Cal.App.4th 692, 700 (2014). The rights of de facto parents are procedurally limited under state law to the context of dependency hearings, where they have "(1) the right to be present at hearings, (2) the right to be represented by retained counsel, and in the discretion of the court, appointed counsel, and (3) the right to present evidence and be heard." Id. at 700; see also Cal. Rule of Court 5.534. Thus, the asserted interest a foster parent has is only "in a potential, still undeveloped familial relationship with prospective adopted children . . . and whatever claim a prospective adoptive parent may have to a child, we are certain that it does not rise to the level of a fundamental liberty interest." Mullins v. Oregon, 57 F.3d 789, 795 (9th Cir. 1995).

Related to procedural rights in the dependency context, the Ninth Circuit acknowledged there is a clearly established right "not to suffer a deprivation of liberty based on fabricated evidence and false representations in child custody proceedings." Huk v. Cnty. of Santa Barbara, 650 F. App'x 365, 366 (9th Cir. 2016). The court found, however, that there exists no protected liberty interest in the continued custody of a foster child and thus rejected the plaintiffs' procedural and substantive due process claims. The panel stated, "Even if it can be established that [the plaintiffs] were deprived of their custody of their foster child through allegedly deceptive means and without any opportunity to contest the validity or reason behind the removal, they have not and can not demonstrate that their custody of their foster child was a liberty interest protected by the Due Process Clause." Id. at 366.

Here, plaintiffs advance that they were deprived of Due Process where defendants provided a sham administrative proceeding related to custody of the child. SAC ¶ 29. Plaintiffs emphasize a laundry list of alleged misdeeds in the course of the administrative proceeding, the grievance process arising from the administrative proceeding, and their appeals. Id. Plaintiffs allege that defendants' conduct undermined their procedural rights as de facto parents to participate as a party at hearings in violation of California Rule of Court 5.534. SAC ¶ 33; Dkt. 57 at 13–14 n.2. The right to participate under Rule of Court 5.534 is not one that the Due Process Clause will protect, however. That Rule only provides procedural protections: (1) to be present at the hearing, (2) to be represented by counsel, and (3) to present evidence. Id. The rule does not include any substantive predicates or include any "mandatory language specifying the outcome." Cf. Rowlands, 606 F.3d at 656. Plaintiffs therefore cannot establish a procedural right protected by the Due Process Clause.

Further, the Huk rationale is applicable to this case. Plaintiffs here, like those in Huk, argue that the Due Process Clause protects them against false representations in custody proceedings. They contend that defendants violated their due process rights by committing a laundry list of misleading acts, including misrepresenting facts to the court.

13

See, e.g., SAC ¶ 29. But plaintiffs here, like those in Huk, similarly fail to establish that any purported misrepresentations resulted in the deprivation of a constitutionally protected liberty interest, namely, the right to familial association. Plaintiffs do not plead and cannot establish a deprivation of that right because, as de facto parents, they are not entitled to its protections.[2] Therefore, even if plaintiffs established that defendants' misleading conduct in the Dependency Action deprived them of the opportunity to participate in those proceedings, plaintiffs have not and cannot establish that they were deprived of any right to familial association. Therefore, the court must dismiss plaintiffs' § 1983 claim for violation of Due Process.[3]

### c. **Monell**-based Claims

"A government entity may not be held liable under 42 U.S.C. § 1983, unless a policy, practice, or custom of the entity can be shown to be a moving force behind a violation of constitutional rights." Dougherty v. City of Covina, 654 F.3d 892, 900 (9th Cir. 2011) (citing Monell v. Dep't of Soc. Servs. of the City of New York, 436 U.S. 658, 694 (1978)). "In order to establish liability for governmental entities under Monell, a plaintiff must prove '(1) that [the plaintiff] possessed a constitutional right of which [s]he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that the policy is the moving force behind the constitutional violation.'" Dougherty, 654 F.3d at 900 (citation omitted).

Within the second prong, "There are three ways to show a policy or custom of a municipality: (1) by showing a longstanding practice or custom which constitutes the standard operating procedure of the local government entity; (2) by showing that the decision-making official was, as a matter of state law, a final policymaking authority

---

[2] It is also difficult to understand the foundation of plaintiffs' asserted deprivation given that they prevailed in the very trial in which they argue they were denied Due Process. SAC ¶ 30.

[3] By this ruling, the court does not countenance allegations of false statements made in the course of legal and administrative proceedings. The allegations, rather, simply do not suffice to establish a Due Process violation. If defendants made false representations in the course of litigation, the remedy was to be sought in that litigation or through perjury charges, not through this separate federal suit.

14

whose edicts or acts may fairly be said to represent official policy in the area of decision; or (3) by showing that an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate." Menotti v. City of Seattle, 409 F.3d 1113, 1147 (9th Cir. 2005) (internal quotation marks and citation omitted).

At the pleading stage, "it is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality." Bd. of Cnty. Comm'rs v. Brown, 520 U.S. 397, 404 (1997). Rather, the plaintiff must "demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." Id. at 404. A plaintiff's Monell claim "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts" to provide the opposing party with fair notice so it can defend itself—merely alleging that a policy exists does not suffice. See AE ex rel. Hernandez v. Cnty. of Tulare, 666 F.3d 631, 637 (9th Cir. 2012) (quoting Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011)).

Here, plaintiffs' claim fails on the first prong of the Monell test. As discussed above, plaintiffs did not possess a constitutional right to participate in the child custody proceedings or a constitutional right to familial association, and they were accordingly not deprived of Due Process.

For the second prong, plaintiffs allege the existence of 10 potential policies that caused the alleged violations of their constitutional rights. SAC ¶ 54. Plaintiffs' descriptions do not target any particular policy in existence, however, and none of them provide sufficient allegations of underlying facts that would enable the opposing party to defend itself. None of the alleged policies provide sufficient allegations of underlying facts to even support a plausible claim. For example, plaintiffs allege that the County maintains:

- a "policy that does not protect foster parents from religious discrimination,"
- a "policy of deciding to remove children from foster parents' care without conducting a best-interest analysis,"
- a "policy that does not require its staff to act in the best-interests of children for

15

whom they are responsible,"

- a "policy of using trickery, duress, fabrication and false testimony, false evidence, and misrepresentation of law (Judicial Deception) in preparing and presenting reports and documents to the Court," and the converse,

- a "policy that does not require its employees not to use trickery, duress, fabrication and false testimony, false evidence, and misrepresentation of law (Judicial Deception) in preparing and presenting reports and documents to the Court."

SAC ¶ 54. The contentions that these policies exist are not supported by factual allegations. The contentions that these policies exist are nonsensical, contradictory, and appear to be entirely concocted by plaintiffs. These cursory assertions are insufficient to plausibly plead that the County has a policy or custom designed to violate the law in the ways plaintiffs advance. The SAC does not contain factual allegations that would support an inference tying defendants' conduct to a widespread custom or practice by County employees, and the Monell claim accordingly fails on the second prong.

There is no need to reach the third or fourth prongs. For both the failure to allege a constitutional deprivation and the failure to plausibly allege the existence of a policy or practice, plaintiffs' third cause of action, seeking to impose § 1983 liability on the County for alleged violations of their constitutional rights under Monell, must be dismissed.

### d. Section 1985

Plaintiffs aver that defendants engaged in a conspiracy to deprive them of their civil rights, giving rise to a claim under Title 42 U.S.C. § 1985. The elements of conspiracy under § 1985(3) are (1) a conspiracy; (2) "for the purpose of depriving . . . any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws"; (3) an "act in furtherance" of the conspiracy; and (4) an injury or deprivation of rights. Life Ins. Co. of N. Am. v. Reichardt, 591 F.2d 499, 502 (9th Cir. 1979) (quoting Griffin v. Breckenridge, 403 U.S. 88, 102–03 (1971)). Because the purpose of § 1985 is "only to protect against deprivations of equal protection," Hickman v. Block, 81 F.3d 168 (9th Cir. 1996), a plaintiff must also show "[5] some racial, or

perhaps otherwise class-based, invidiously discriminatory animus [lay] behind the conspirators' action" and [6] that the conspiracy "aimed at interfering with rights" that are "protected against private, as well as official, encroachment," Bray v. Alexandria Women's Health Clinic, 506 U.S. 263, 267–68 (1993). "A mere allegation of conspiracy without factual specificity is insufficient to support a claim." Sanchez v. City of Santa Ana, 936 F.2d 1027, 1039 (9th Cir. 1990).

Here, plaintiffs fail to plausibly allege a conspiracy to deprive anyone "of the equal protection of the laws, or of equal privileges and immunities under the laws." Life Ins. Co. of N. Am., 591 F.2d at 502. Plaintiffs do not advance any equal protection claim. They do not identify a discriminatory animus on the part of defendants. Plaintiffs imply animus on the basis of Sanclemente's religious questioning (SAC ¶ 21), but as discussed above, they do not establish a nexus between Sanclemente's religious questioning and the alleged harm they suffered throughout the administrative and legal proceedings to preserve their custody of the child. Even if the court accepts the laundry list of misleading acts offered as "acts in furtherance" of a conspiracy (see, e.g., SAC ¶ 46), plaintiffs fail to establish that these were aimed at interfering with a constitutional right. Plaintiffs' conclusory allegation of conspiracy (SAC ¶ 49) lacks factual specificity and is thus insufficient to support a claim. Plaintiffs' § 1985 claim must also be dismissed.

### 3. Supplemental Jurisdiction

The court, under Title 28 U.S.C. § 1367(c), may decline to exercise supplemental jurisdiction under circumstances that include when "the district court has dismissed all claims over which it ha[d] original jurisdiction[.]" 28 U.S.C. § 1367(c)(3). As the court has dismissed the federal claims before it, which provided the only basis for its original jurisdiction, the court exercises its discretion to decline jurisdiction over the remaining state law claims. The court thus does not reach defendants' special motion to strike under California Code of Civil Procedure section 425.16, the "anti-SLAPP" statute.

//
//

**CONCLUSION**

For the reasons stated above, the court GRANTS defendants' motion to dismiss for failure to state a claim. The SAC fails to comply with the court's prior order and does not correct the deficiencies noted in that order, it fails to provide a short and plain statement of facts giving rise to defendants' liability as required by Rule 8, and it fails to state a claim for any of the causes of action arising under federal law. The federal claims are hereby DISMISSED WITH PREJUDICE, and the state law claims are dismissed without prejudice to filing in state court.

**IT IS SO ORDERED.**

Dated: November 10, 2022

                                              */s/ Phyllis J. Hamilton*
                                              PHYLLIS J. HAMILTON
                                              United States District Judge